**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

BOBBY HARRIS,                              :

     Plaintiff,                        :

vs.                                        :       CA 21-0020-MU

KILOLO KIJAKAZI,                           :
Acting Commissioner of Social Security,
                                           :

     Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Bobby Harris brings this action, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social

Security denying his claims for a period of disability, disability insurance benefits, and

supplemental security income. The parties have consented to the exercise of jurisdiction

by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this

Court. (Doc. 19 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P.

73, the parties in this case consent to have a United States magistrate judge conduct

any and all proceedings in this case, . . . order the entry of a final judgment, and

conduct all post-judgment proceedings."); *see also* Doc. 20 (order of reference)). Upon

consideration of the administrative record, Plaintiff's brief, and the Commissioner's

brief,[1] the Court concludes that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings consistent with this decision.[2]

## I. Procedural Background

Plaintiff filed applications for disability insurance benefits and supplemental security income on or about June 19, 2019, alleging a disability onset date of April 13, 2019. (*See* Doc. 13, PageID. 233-45). Harris' claims were initially denied on August 8, 2019 (*id.,* PageID. 126, 139-42 & 147-51) and, following Plaintiff's September 25, 2019 request for a hearing before an Administrative Law Judge ("ALJ") (*id.,* PageID. 156-57), a hearing was conducted before an ALJ on May 1, 2020 (*id.,* PageID. 86-112). On May 29, 2020, the ALJ issued a decision finding that the claimant was not disabled and therefore, not entitled to social security benefits. (*Id.,* PageID. 71-81). More specifically, the ALJ determined at the fifth step of the five-step sequential evaluation process that Harris retained the residual functional capacity to perform light work, with identified postural and environmental limitations, and those light and sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*see id.,* PageID. 76 & 80; *compare id. with* PageID. 106-08). On June 16, 2020, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*id.,* PageID. 340-41); the Appeals Council denied Harris' request for review on December 11, 2020 (*id.,* PageID. 57-59). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[1]    The parties waived oral argument. (*See* Docs. 18 & 21).

[2]    Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 19 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

Plaintiff alleges disability due to major dysfunction of the left shoulder and arm, a back disorder, and obesity.  The Administrative Law Judge (ALJ) made the following relevant findings:

**3.      The claimant has the following severe impairments: major joint dysfunction of the left shoulder and arm; a back disorder; and obesity (20 CFR 404.1520(c) and 416.920(c)).**

.      .      .

**4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

.      .      .

**[5].     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand and walk 6 of 8 hours each for a full 8-hour workday. His pushing and pulling and gross/fine dexterity is unlimited except no push/pull or reaching/lifting overhead with the left upper extremity and frequent fingering and handling with the left hand, right hand is normal. He can occasionally climb stairs but not ladders, scaffold, ropes, or running. He can occasionally bend, stoop, crouch, crawl, balance, twist and squat.  He should avoid exposure to heights, dangerous machinery, or uneven surfaces.**

.      .      .

**[6].     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.      .      .

**[7].     The claimant was born on July 29, 1983 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**[8].    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**[9].    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**[10].   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.    .    .

**[11].   The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Doc. 13, PageID. 74, 75, 76, 78, 79 & 80).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9,

2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f);

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The

claimant bears the burden at the fourth step of proving that he is unable to perform his

---

[3]       "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history. *Id*. at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v.*

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Harris advances two reasons the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ violated 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii) by failing to properly evaluate the duration requirement of his severe impairments; and (2)  the ALJ violated 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) by finding the opinion of the treating physician not persuasive. Because both issues "bear" upon the ALJ's RFC determination, the Court considers them through this RFC prism.

As indicated above, RFC comes into play at the at the fourth and fifth steps of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work . . . and at the fifth step of the sequential evaluation process . . . to determine if you can adjust to other work . . . ."). In determining a claimant's RFC, which is "'that which an individual is still able to do despite the limitations caused by his or her impairments[,]'" the ALJ "considers all the

---

[4]      This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

evidence in the record[.]" *Washington v. Social Sec. Admin., Commissioner,* 503 Fed.Appx. 881, 882-83 (11th Cir. Jan. 15, 2013), quoting and citing *Phillips, supra,* 357 F.3d at 1238.[5] Moreover, at the fifth step of the sequential evaluation process, the Commissioner must establish that a significant number of jobs exist in the national economy that the claimant can perform given her RFC, age, education, and work experience. *See, e.g., Bellew v. Acting Commissioner of Social Sec.,* 605 Fed.Appx. 917, 930 (11th Cir. May 6, 2015) (citation omitted).

As part of the process of determining a claimant's RFC, that is, "the most [he] can still do despite" the limitations caused by her impairments, *See, e.g.,* 20 C.F.R. 404.1545(a)(1), an ALJ must take into consideration the medical opinions of treating, examining, and non-examining physicians and, indeed, this issue is often at the forefront in social security cases.  *See Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In March of 2017, the Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c & 416.920c. Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a) & 416.920c(a); *see also Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala.

---

[5]     The responsibility for making the residual functional capacity determination at the fourth step of the sequential evaluation process rests with the ALJ, *see, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."), who must "'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence' in the case." *Phillips, supra,* 357 F.3d at 1238 (alteration in the original), quoting 20 C.F.R. § 404.1520(e).

Sept. 9, 2020) ("The revisions [to Social Security regulations regarding the evaluation of medical evidence] state that the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources.' 20 C.F.R. § 404.1520c(a)."). The regulations go on to provide that when evaluating the persuasiveness of medical opinions, "[t]he most important factors to be considered are those of supportability and consistency[.]" *Id.* at *5; *see also Swingle v. Commissioner of the Social Sec. Admin.,* 2020 WL 6708023, *2 (M.D. Fla. Nov. 16, 2020) ("When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency.").  "Thus, the ALJ 'will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions' in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c)." *Id.* (footnotes omitted).

The ALJ analyzed the opinion evidence of Plaintiff's treating physician, Dr. Laura Hyer, and the prior administrative medical findings of non-examiner Dr. Gloria Sellman in the following manner:

> On March 11, 2020, [] Dr. Laura Hyer provided a Medical Source Statement for the claimant. She opined that the claimant could sit, stand and walk normally but could not lift more than 5 pounds. She further opined that the claimant would miss work more than 3 times a month and could not push/pull or reach[] overhead with [h]is left upper extremity. Additionally, Dr. Hyer opined that the claimant's pain would prevent h[im] from maintaining attention, concentration, and pace for two-hours; and that he would be "off task" at work for 25% or more (Ex. 11F, pgs. 1-2). I am not persuaded by this opinion as such extreme limitations are not supported by other objective medical evidence in the record nor would the alleged impairments last longer than 12 months. Notably, the claimant admitted at the hearing that he takes Norco and Lyrica for general and nerve pain, which appears to[] help[] in managing his symptoms. He also

had left shoulder injections and a nerve block on 2/26/20. (Exhibits 9F, p.5, 10, 19, 20 and 10F, p.5 and 7).

I have considered the opinion of the State Agency Medical Consultant Gloria Sellman, M.D., who opined that the claimant could perform a reduced range of light exertional level work. I find this opinion persuasive as medical records show that [] the claimant is able to care for himself, visit with his children daily, does home stretching exercises and walks every day, without any leg issues (Ex. 5E and Hearing Testi[mony]). He testified at the hearing he could lift '35-40 pounds'.

(Doc. 13, PageID. 78).

An ALJ is required to independently assess a claimant's RFC "based on **all** of the relevant medical and other evidence." *See, e.g.,* 20 C.F.R. § 404.1545(a)(3) (emphasis supplied). The initial problem in this case is that the RFC assessment of the state-agency medical consultant, which the ALJ found persuasive (Doc. 13, PageID. 78) and which the ALJ's RFC assessment all but mirrors (*compare id.,* PageID. 76 (ALJ's RFC assessment)) *with id.,* PageID. 120-23 (state-agency consultant's RFC assessment)), does not provide substantial evidence on the record as a whole because the medical consultant's assessment was not based on the record as a whole. Instead, Dr. Sellman's assessment was based on the medical record as of August 8, 2019 (*see id.,* PageID. 123 (Dr. Sellman's signature)), when the evidence showed that the gunshot wound to Plaintiff's back/left-side-shoulder area had healed (*see id.,* PageID. 122-23), and Sellman opined that "with continued compliance to medical t[reatment], the cl[aimant] would be expected to function at least within the limitations of the RFC at 12 months post onset[.]" (*Id.,* PageID. 123). Unfortunately, however, the ALJ did not reconcile (or attempt to reconcile) Dr. Sellman's prospective RFC opinion with the remaining medical evidence of record, specifically the evidence generated after August 8, 2019, reflecting Harris' continued and consistent complaints of left shoulder (upper

arm) pain, with associated limited range of motion, tenderness and edema on examination and receipt of injections for that pain (*see id.,* PageID. 463-65, 475-76, 478, 499, 503, 506, 508-09 & 513-14), though to February 25, 2020, when Plaintiff had a significant surgical procedure on his left shoulder, inclusive of a left shoulder arthroscopy, subacromial decompression, acromioplasty, biceps tenotomy, and removal of foreign body from subacromial space (*id.,* PageID. 520; *see also id.,* PageID. 521 ("Diagnostic arthroscopy was [] performed. . . . He was noted to have biceps erythema. Biceps tenotomy was performed. Rotator interval was released. The patient, in addition, was noted to have a superior labral tear closely approximated to the biceps anchor. The anterior, posterior labrum was noted to be intact. We then turned attention to the subacromial space which was noted to have a large amount of bursal tissue. Bursectomy was then performed. Acromioplasty was performed resecting approximately 4-5 mm of bone to a stable base. We then turned attention to the lateral gutter and [were] able to use a shaver as well as an electrocautery wand to remove tissue from the lateral gutter. After removing tissue from the lateral gutter, we were able to carefully identify the foreign metallic debris from his gunshot injury. This was removed through his lateral incision.")) and then on through April 1, 2020, during which time Dr. Hyer examined Harris on at least two occasions, noting continued complaints of left shoulder pain, with associated limited range of motion and tenderness (*see id.,* PageID. 534 & 537), and completed a physical medical source statement on which she indicated that Harris could never lift and/or carry over 5 pounds, never perform pushing and pulling movements, never reach (including overhead), and rarely perform gross or fine manipulation (*see id.,* PageID. 526). So, even though Sellman's clear expectations of

10

continued improvement in Plaintiff's shoulder impairment did not occur, and Plaintiff's condition indeed continued on the same track unabated to the point where he had a significant surgery to repair numerous (but not all[6]) problems associated with his left shoulder, the ALJ ignored this evidentiary trajectory (during his step 4 analysis) and, instead, completely divorced Plaintiff's condition after he was shot on April 13, 2019 from his condition after his surgery in February of 2020 (*see* Doc. 13, PageID. 78 ("While I acknowledge that[] the claimant has some functional limitations, I am not persuaded such limitations would last for more than twelve months, but only for a temporary recovery period less than twelve months. The claimant has had a serious recent left shoulder surgery, however, within a normal recovery period, he should successfully recover within 12 months and he would not be precluded from other light or sedentary work activity or disabled within the context of the Social Security Act. It is recognized that the claimant may have some difficulty occasionally and probably cannot perform all of the tasks he previously has done. However, the record clearly shows he is not totally disabled from performing all types of substantial gainful activity.")), despite having previously determined (at step 2) that Plaintiff had a severe impairment of major joint dysfunction of the left shoulder and arm (Doc. 13, PageID. 74), that is, by definition, an impairment meeting the duration requirement and significantly limiting Plaintiff's ability to perform basic work activities, *compare, e.g., Gilbert v. Berryhill,* 2019 WL 918304, *3 (N.D. Ala. Feb. 25, 2019) (recognizing that the sequential evaluation

---

[6]     It is unclear to this Court whether the surgeon repaired the labral tear. (*See* Doc. 13, PageID. 521). And if this tear was not repaired, it would be reasonable that Plaintiff would experience some limitations because of the tear even after he otherwise recovered from this serious shoulder surgery.

analysis only proceeds beyond step 2 if, at step 2, it is determined that the claimant has a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his ability to perform basic work activities) with *Stacy v. Commissioner, Social Sec. Admin.,* 654 Fed.Appx. 1005, 1008 (11th Cir. July 7, 2016) ("Step Two asks whether [the claimant] has a severe medically determinable physical or mental impairment that falls under certain duration requirements.") and *Martin v. Berryhill,* 2018 WL 6694830, *4 (M.D. Ga. Mar. 29, 2018) ("'At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.' § 404.1520(a)(4)(ii).").  And the ALJ's analysis in this regard is not only confusingly incorrect for dividing up the evidence but, as well, it founders because it consists of rank speculation unsupported by the medical evidence of record. The speculative nature of the ALJ's analysis is readily revealed by his reference to "a normal recovery period" and the statement that Harris "***should*** successfully recover within 12 months[.]" (Doc. 13, PageID. 78) (emphasis supplied). Finally, getting back to Dr. Sellman and all the evidence she did not consider—the complaints of continuing left shoulder pain, with associated limited range of motion and tenderness, culminating in a serious and quite extensive left shoulder surgery in February of 2020, following which there were continuing complaints of pain, with Dr. Hyer, the treating physician, indicating that Plaintiff's left shoulder impairment severely limited his ability to lift weight, push/pull arm controls, reach (including overhead), and perform fine and gross manipulation—it is

apparent to this Court that the non-examiner's physical RFC does not "survive" unscathed given that it was based on Sellman's own speculation that "with continued compliance to medical t[reatment] the cl[aimant] would be expected to function at least within the limitations of the RFC at 12 months post onset" (Doc. 13, PageID. 123) and, as the evidence played out, even at the time of the penning of the ALJ's hearing decision on May 29, 2020 (and by the ALJ's own backhanded, albeit speculative, admission), Harris apparently was unable to perform light or sedentary work (*see id.,* PageID. 78 ("The claimant has had a serious recent left shoulder surgery, however, with a normal recovery period, he should successfully recover within 12 months and he would not be precluded from other light or sedentary work activity[.]")).  So, at bottom, the ALJ's decision is all smoke and mirrors containing numerous layers of speculation which evade clear review because it is not based on a seamless, longitudinal consideration of the medical (and other) evidence of record.

As but another layer to consider, no expert apart from Dr. Hyer, whose opinion the ALJ found unpersuasive (*see* Doc. 13, PageID. 78),[7] expressed an opinion about what the post-August 2019 records meant for Harris' ability to work despite his

_____

[7]      The ALJ's analysis of Dr. Hyer's opinion is particularly troubling because a major basis for the ALJ finding the opinion unpersuasive is because "the alleged **impairments** [would not] last longer than 12 months[]" (Doc. 13, PageID. 78), a position that is untenable in light of the ALJ's step 2 finding that Plaintiff's "major joint dysfunction of the left shoulder and arm; a back disorder; and obesity" are severe impairments, that is, impairments that meet the duration requirement and significantly limit his ability to perform basic work activities. *See Gilbert, supra,* at *3.

Since this case is being remanded for further consideration, the ALJ is reminded to hew to the requirement in the regulations that he explain how he considered both the supportability and consistency factors for Hyer's medical opinions and Dr. Sellman's prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

impairments (*id.,* PageID. 526 (physical medical source statement completed on March 11, 2020) & PageID. 527 (clinical assessment of pain completed on March 11, 2020); *see also id.*, PageID. 533-38 (in clinic notes from March 11, 2020 and April 1, 2020, Dr. Hyer observed that Harris had recent surgery on his left shoulder, yet was still complaining of worsening pain)). And the fact that the ALJ's RFC assessment in this case all but mirrors the one given in August of 2019 by Dr. Sellman before any of the just-cited evidence existed, [8] makes it quite impossible for this Court to find that the ALJ properly took "into account and evaluate[d] the record as a whole." *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (citations omitted); *see also Washington, supra,* 503 Fed.Appx. at 882-83 (in determining a claimant's RFC, the ALJ must "consider[] all of the evidence in the record[.]"). This failure is particularly acute in this case, again, given the ALJ's action in reviewing the evidence discretely and not as a whole (on a longitudinal basis), by inexplicably drawing a line in the sand between evidence post-gunshot wound on April 13, 2019 and evidence post-surgery on February 25, 2020. (*Compare* Doc. 13, PageID. 78 *with id.,* PageID. 76-78).[9]

---

[8]       The ALJ found Dr. Sellman's opinion persuasive because "***medical records*** show that [] the claimant is able to care for himself, visit with his children daily, does home stretching exercises, and walks every day, without any leg issues[.]" (Doc. 13, PageID. 78) (citing Exhibit 5E and Hearing Testimony; emphasis added). Incredibly, however, the ALJ does not cite to any medical records in support of these "abilities;" instead, he cites to hearing testimony and the Adult Function Report completed by Harris on July 22, 2019 (Doc. 13, PageID. 292-99, Exhibit 5E), neither of which (obviously) constitute medical records. And since the foundation for the ALJ's decision to find Dr. Sellman's opinion persuasive crumbles, this finding cannot be found to be supported by substantial evidence.

[9]       Stated somewhat differently, the ALJ improperly separated the evidence into two "camps," post-gunshot wound on April 13, 2019 and post-left shoulder surgery on August 25, 2020, without considering the evidence as a whole and the impact of the entirety of the evidence on Harris' ability to perform work activity.

14

The Court finds that the ALJ's evaluation of the medical opinions and prior administrative medical findings is not supported by substantial evidence and that substantial evidence, as well, does not support the ALJ's RFC assessment, which simply all but parroted the RFC findings of a state-agency consultant who did not have before her all the evidence of record for her consideration.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff a period of disability, disability insurance benefits, and supplemental security income be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 3rd day of November, 2021.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**